IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bevan Xavier Brooks, | ) | |
| a/k/a | ) | |
| | ) | Civil Action No. 2:10-2010-MJP-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Chief Horace James, | ) | |
| Ofc. Clyde Johnson, | ) | |
| Nurse Webber; Deputy | ) | |
| Director Mrs. Dozier, | ) | |
| Sgt. Mathis, Ofc. A. Brown, | ) | |
| Director Willie Bamberg, | ) | |
| Dr. Sweatman, Cpt. Charles | ) | |
| Govan, Cpl Murphy, Sgt. | ) | |
| Woods, Ofc. Paul, Ofc. | ) | |
| Chiosolm, Ofc. Ryan, | ) | |
| and Sgt. Frisk, | ) | |
| | ) | |
| | ) | |
| Defendants.[1] | ) | |
| | ) | |

The Plaintiff, a pro se inmate, seeks relief pursuant to 42 U.S.C. § 1983.  This

matter is before the Court on the Defendants' Motion for Summary Judgment.  (Dkt. # 39.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B),

and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all

---

[1]The Defendants note that several of their last names have been misspelled by the Plaintiff and on the docket.  Dr. Sweatman's name is correctly spelled "Swetnam," Sgt. Woods' name is correctly spelled "Wood," and Captain Ryan's name is correctly spelled "Ryant."    (Defs.' Mem. Supp. Summ. J. Mot. at 1 & Ex. 10 - Swetnam Aff. at 1; Ex. 16 - Ryant Aff.; Ex. 18 Wood Aff.)    In this report, however, the undersigned will continue to use the spelling of these Defendants' names as set forth in the docket.

pretrial matters in cases filed under § 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on July 28, 2010, seeking damages for alleged civil rights violations.  (Dkt. # 1.)  On September 3, 2010, he filed an Amended Complaint.  (Dkt. # 18.)  On November 22, 2010, the Defendants filed a Motion for Summary Judgment.  (Dkt. # 39.)  On November 23, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),  the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion.  (Dkt. # 40.)  On January 12, 2011, the Plaintiff filed a response opposing the motion.  (Dkt. # 51.)

## FACTS PRESENTED

At the time this action was filed, the Plaintiff was a pretrial detainee at the Orangeburg-Calhoun Regional Detention Center ("OCRDC").   In his Complaint and Amended Complaint, the Plaintiff separates his allegations into a total of 31 claims all of which occurred in July and August 2010.  (Compl. & Am. Compl.)   These claims, which are often duplicative and overlap as alleged, are summarized as follows.

In his original complaint, the Plaintiff alleges his due process rights were violated in regard to two separate disciplinary actions which occurred on July 2nd and 12th, 2010.  (Compl. 2.)   He alleges that he did not receive proper notice of the disciplinary hearing and he was not allowed to testify or present any evidence or witnesses.  *Id.*  He alleges

2

he meet with Chief Horace James and discussed the due process violations and James stated he would investigate, but he never heard anything from James after that. (Compl. at 5.) He also alleges that his disciplinary convictions should be dismissed because when he was first booked in the OCRDC he was not informed of the OCRDC's polices, rules, guidelines, or regulations. (Compl. at 13.)

The Plaintiff alleges he was threatened, grabbed, and chased by Officer Clyde Johnson on July 14, 2010. (Compl. 3.) He alleges on July 12, 2010, he complained to Captain Charles Govan that he had experienced an allergic reaction to the nutra-loaf, had nothing but a few slices of the nutra-loaf for ten days, and he requested a normal food diet (Compl. 3-4.) He alleges Govan ignored his complaints, and denied him the opportunity to be seen by medical staff. (Compl. at 4.) He alleges the next day, he voiced the same complaints to Nurse Webber, and she gave him Maalox and told him that she would have to check with a supervisor regarding the Plaintiff's request for regular meals. *Id.* He alleges that later that day, Deputy Director Dozier told him that the nurse could not order him regular meals and she ordered that the Plaintiff continue on the nutraloaf. *Id.* He alleges that later that night he was transported by the EMS to the hospital because he had passed out from hunger and being weak. *Id.* On July 15, 2010, the Plaintiff acknowledges that he was offered a liquid diet, but he refused because he states this was also not a proper diet. (Compl. 6.)

3

The Plaintiff alleges he passed out again on July 15, 2010, due to weakness and hunger. (Compl. 6.) He states his blood pressure and pulse were checked, but he was left semi-conscious on the cell floor without further medical treatment. (Compl. 6.) He states he eventually managed to get up approximately four hours later and that "anything could've been wrong with [him]" and the EMS should have been dispatched (Compl.6-7.)

The Plaintiff alleges he was placed on the nutraloaf diet on July 2nd and when he filed this complaint, he had been eating only two slices of the loaf at each meal, or six slices a day even though he is allergic to it. (Compl. at 12.) The Plaintiff alleges he complained to Nurse Webber regarding his allergic reaction to the nutraloaf and his weight loss and that she responded that the nutraloaf was nutritionally adequate. (Compl. at 14.) He alleges he relayed the same concerns to Director Willie Bamberg and Bamberg told him to see the nurse even though he knew that the Plaintiff had already seen Nurse Webber. *Id*. The Plaintiff alleges he saw Dr. Sweatman on August 23, 2010, and that Dr. Sweatman told him his rash was not an allergic reaction to the nutraloaf and he refused to order the Plaintiff regular meals. (Compl. at 15.) He states that Dr. Sweatman stated he would have to discuss the situation with the Director. *Id*. The Plaintiff alleges Dr. Sweatman should have performed a complete examination of the Plaintiff to determine if the Plaintiff was in need of vitamins, supplements, or regular meals. *Id.* The Plaintiff alleges that the nutraloaf diet is used at the OCRDC as a control mechanism and a threat and that it should be limited in duration. (Compl. 11.)

4

The Plaintiff alleges that when he was placed on administrative lockdown, he was not allowed to order stamps, envelopes, legal pads, or pens, from the commissary. (Compl. 9.) He alleges this interfered with his right to correspond with his family, attorney, and the courts. *Id.* The Plaintiff alleges his due process rights were violated and that his disciplinary convictions should be dismissed because when he was first booked in the OCRDC he was not informed of the detention center's polices, rules, guidelines, or regulations. (Compl. at 13.)

In his Amended Complaint, the Plaintiff alleges that on August 21, 2010, Officer Paul and Sgt. Woods physically assaulted him even though he was non-threatening. (Am. Compl. at 4.) He states that he filed complaints regarding the incident, but nothing was done. *Id.*

The Plaintiff alleges that on August 22, 2010, Captain Ryan ordered that he be placed in restraints and taken to an observation cell even though he was not suicidal. (Am. Compl. at 2.) He also alleges his legal paperwork and religious materials were taken from him. *Id.* The Plaintiff also alleges that on August 22, 2010, Captain Ryan and Sgt. Fick periodically throughout the day ordered officers in full riot gear to enter the Plaintiff's cell, restrain the Plaintiff, and search the Plaintiff's cell. (Am. Compl. at 4.) He states a video was not made of the incidents. *Id.*

On August 24, 2010, the Plaintiff alleges Officer Chisolm denied him his mandated recreation time, a shower, and medication. *Id.* On August 25, 2010, the Plaintiff alleges

that Captain Govan refused to allow the Plaintiff to keep his door flap open denying him fresh air which he is required to have for medical reasons. (Am. Compl. at 2.) He also alleged Govan threatened to spray him with pepper spray. *Id.* The Plaintiff alleges 35-45 minutes later, he passed out due to the lack of fresh air and had to be evaluated by the nurse. (Am. Compl. 2-3.)

On August 26, 2010, the Plaintiff alleges Officer Woods and Sgt. Paul came to his cell and threatened him with pepper spray fro no reason. (Am. Compl. at 3.) On August 27, 2010, the Plaintiff alleges he informed Director Bamberg of his claims, but that Bamberg after listening to him for a short period of time walked away from him. (Am. Compl. 3-4.)

On August 29, 2010, the Plaintiff alleges that Captain Ryan and Sgt. Fisk ordered Officer Williams to place the Plaintiff into four point restraints before being allowed his recreation hour without any explanation. (Am. Compl. 5.) He also states that he was denied a shower. *Id.*

The Plaintiff is seeking actual damages and injunctive relief in the form of an order prohibiting the allegedly objectionable behavior in the future and the reprimand and discipline of the Defendants. (Compl. 9; 17.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

6

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the

7

granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

Reviewing the Plaintiff's Complaint and Amended Complaint, he has alleged excessive force, medical indifference, conditions of confinement, due process violations, and denial of access to the courts claims.

**Conditions of Confinement**

The Plaintiff has alleged several claims relating to the conditions of his confinement at the OCRDC.

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (*citing Bell*, 441 U.S. at 537). Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. *Bell,* 441 U .S. at 538.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " *Strickler v.*

8

*Waters,* 989 F.2d 1375, 1379 (4th Cir. 1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer,* 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; *see also Parrish v. Cleveland,* 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler,* 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The Plaintiff has raised several claims regarding the food he was served at the ORCDC when he was placed into administrative segregation, or lockdown, as a result of a disciplinary action. In the OCRDC, all inmates who are placed on lockdown are served nutralaof. (Defs.' Mem. Supp. Summ. J. Mot. Ex. #1 - Director Willie Bamberg Aff. at 2.)[2]

---

[2]Nutraloaf is prepared by blending a variety of foods from normal prison meals, according to nutritionally balanced recipes, freezing the resulting substance, and then baking it into a solid loaf. *LeMaire v. Maass,* 12 F.3d 1444, 1455 (9th Cir.1993).

Reviewing the Plaintiff's allegations in his Complaint and Amended Complaint, the undersigned finds that the Plaintiff has failed to state a claim

It is well settled that prisoners have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotations marks and citation omitted); *see also Farmer v. Brennan,* 511 U.S. 825, 833 (1994). The Constitution does not guarantee, however, food that is prepared and served in a culinarily pleasing manner. *See Lunsford v. Bennett,* 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); *La Maire v. Maass,* 12 F.3d 1444, 1456 (9th Cir.1993) (holding that a temporary diet of nutraloaf did not rise to a constitutional violation); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir.1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.")

First, the Plaintiff has set forth no evidence to show that the Defendants were deliberately indifferent to his health or welfare or that he was placed on nutraloaf maliciously or sadistically for the sole purpose of causing harm. *See LeMaire v. MAASS*, 12 F.3d 1444, 1456 (9th Cir. 1993). Second, the nutraloaf itself poses no constitutional issues, as a nutritional matter or as a disciplinary one. *See Thomas v. Warner,* 237 Fed. Appx. 435, 438 (11th Cir. 2007) (finding that the plaintiff did not state an Eighth Amendment claim based on his dietary restrictions for high blood pressure and being fed "nutraloaf" for 20 days during isolation.); *Gates v. Huibregtse,* 69 Fed. Appx. 326, 327 (7th Cir. 2003) (finding that inmate's claim, that placement on a nutriloaf diet for misconduct is

10

cruel and unusual punishment, frivolous and that while food served in prison must be nutritious, it does not have to be delicious or appetizing); *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993) (finding that inmates complaint regarding the use of nutri-loaf does not rise to the threshold level of a constitutional deprivation).[3]

Finally, the Plaintiff has not shown that he suffered more than a de minimis injury, as required from his diet of nutraloaf. While the Plaintiff alleges he is allergic to the nutraloaf and developed a skin rash from it, there is no medical evidence supporting this conclusion and, furthermore, a skin rash would be similar to injuries rejected as insufficient in similar cases. Other courts have required significantly more serious injuries to satisfy the objective element of an Eighth Amendment claim concerning nutraloaf or other types of meals. *Cf. Gates,* 69 Fed. Appx. at 327 (suggesting that vomitting blood after repeated regurgitation might state a claim); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir.2001) (suggesting that prisoner who lost forty-five pounds on nutri-loaf diet might have had Eighth Amendment claim). Furthermore, the Plaintiff was offered a liquid diet in lieu of the nutraloaf which he refused. As the Plaintiff was offered a liquid diet substitute and he does not contest the nutritional value of the nutraloaf nor does he allege any permanent serious injury or harm of any kind, the Plaintiff has failed to state a claim in regard to his being served nutraloaf while at the OCRDC.

The Plaintiff has also alleged that on August 25, 2010, Captain Govan refused to allow the Plaintiff to keep his door flap open denying him fresh air which he is required to

---

[3]Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979).

have for medical reasons.  He also alleges he was denied recreation time and a shower on August 24 and 29, 2010.  The Plaintiff, however, fails to set forth any injury resulting from these alleged incidents.  Therefore, these allegations, without more, and are not sufficient to state a claim.   *Chavis v. Fairman*, 51 F.3d 275, 1995 WL 156599 (7th Cir. 1995) (unpublished) (holding "generally, even dramatic restrictions on outside exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity"); *Curtis v. Fairman*, 1997 WL 159319 (N.D.Ill. March 24, 1997) (unpublished) (detainee in segregation who was denied out-of-cell recreation for a twenty-nine day period failed to state a claim where he did not assert that he was unable to exercise within the confines of his cell or that his health was threatened by the denial of recreation).

The Plaintiff also alleges that on August 22, 2010, Captain Ryan and Sgt. Fick periodically throughout the day ordered officers in full riot gear to enter the Plaintiff's cell, restrain the Plaintiff, and search the Plaintiff's cell.  (Am. Compl.)  He states a video was not made of the incidents.  *Id.*  Again, the Plaintiff has not presented any evidence to show that he suffered any harm related to this alleged incident. *Wilson v. Cook County Bd. of Commissioners,* 878 F.Supp. 1163, 1167-1168 (N.D.Ill.1995) (holding pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury); *Farmer v. Brennen*, 511 U.S. 825, 834-835 (1994) (noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the

knowledge that harm [would] result"). Accordingly, the Defendants should be granted summary judgment on the Plaintiff's claims relating to the conditions of his confinement.

**Due Process Violation Claims**

The Plaintiff alleges that his due process rights were violated in regard to his disciplinary actions because he did not receive any notice and he was not allowed to testify or present any evidence or witnesses. (Compl. at 2.)  He also alleges that his disciplinary convictions should be dismissed because when he was first booked in the OCRDC he was not informed of the detention center's polices, rules, guidelines, or regulations. (Compl. at 13.)

It is true that disciplinary proceedings which implicate a protected liberty interest demand due process. *See Wolff v. McDonnell,* 418 U.S. 539 (1974).  First, while the Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. *See generally, Wolff,* 418 U.S. at 557; *Sandin v. Connor*, 515 U.S. 472, 478 (1995) (The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"). The due process procedures required by *Wolff* and its progeny are not required unless the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483 (rejecting inmate's claim that either the Constitution or state statutes required due process for placement in disciplinary segregation). *See also Blount v. Johnson*, No. Civ. A, 2006 WL 335606, *3 (W.D.Va. 2006) (dismissing Blount's claim that he was entitled to hearing before being placed on diet loaf) (*citing Gates v. Huibregtse*, 69 Fed. App'x 326, 328 (7th

13

Cir. 2003) (holding "[p]rison is hardly known for its fine dining" and the imposition of a diet of "nutri-loaf" as punishment for misconduct during meal service was not atypical and significant hardship in relation to the ordinary incidents of prison life, and thus due process did not require officials to hold hearing before imposing punishment) (unpublished)); *Griffis v. Gundy*, 47 Fed. Appx. 327, 328 (6th Cir. 2002)(holding "being fed a food loaf does not implicate a due process liberty interest.")(*citing Sandin v. Conner*, 515 U.S. 472, 484 (1995)). As being placed in administrative segregation and being fed nutraloaf do not implicate any due process liberty interests, the Plaintiff was not entitled to the due process rights set forth in *Wolff.* Accordingly, the Plaintiff has failed to state a due process claim and the Defendants are entitled to summary judgment on these claims.

**Medical Indifference Claims** [4]

The Plaintiff also alleges claims regarding his medical care while at the OCRDC. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the

---

[4]As with confinement conditions of pretrial detainees, medical claims are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. However, the standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment. *Hill v. Nicodemus,* 979 F.2d 987, 991 (4th Cir. 1992).

Eighth Amendment is offended.  *Id.* at 104.  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Deliberate indifference is a very high standard.  In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment."  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  *Estelle,* 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir.1986).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Further, mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. *Estelle,* 429 U.S. at 106.  While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s]

15

to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); *see also Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, the Plaintiff's has presented no evidence from which a reasonable jury could find that the allegations of which he complains presented a substantial risk to his health or safety. *See Farmer,* 511 U.S. at 837 (stating that the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Here, the undisputed evidence shows that the Plaintiff received medical treatment on numerous occasions and even assuming the Plaintiff was not taken to the hospital or provided the additional care he would like to have received, there is no evidence that he suffered any injury. *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993) (holding that "[i]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."). Based on this undisputed evidence, no reasonable jury could find that the Defendants were deliberately indifferent

to any serious medical needs of the Plaintiff.  Accordingly the Defendants are entitled to summary judgment on these claims.

**Denial of Access Claims**

To the extent that the Plaintiff is alleging a claim of denial of access to the courts, the undersigned finds he has failed to state a claim.

Prisoners have a right to meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The right of access to the courts is protected by the Due Process and Equal Protection Clauses.  *Murray v. Giarratano,* 492 U.S. 1, 11 n. 6 (1989).  "It is undisputable that indigent inmates must be provided at state expense with paper and pens to draft legal documents, with notarial services to authenticate them, and stamps to mail them."  *Bounds v. Smith*, 430 U.S. 817, 823 (1977).  In *Lewis v. Casey,* 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access.  *Id.* at 352-53.  A claim for failure to provide access to the courts must be pleaded with specificity.  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996).

"[A]n inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions." *Cyrus v. U.S. Marshals of Columbia, SC,* 2007 WL 601610, *4 (D.S.C. 2007).  He must establish a specific prejudice stemming from the denial of the item. Id. In order to plead a denial of access to the courts claim, a plaintiff must identify with specificity a non-frivolous legal claim that he was prevented from litigating by the defendants' actions.

*Lewis,* 518 U.S. at 351-53 & n. 3.  The Plaintiff has failed to allege any actual injury related

to his allegations that the Defendants interfered with his access to the courts. Accordingly,

the Plaintiff has failed to state a claim of denial access to the courts and the Defendants

are entitled to summary judgment on these claims.[5]

**Excessive Force Claims**

The Plaintiff alleges that on August 22, 2010, Officer Paul and Sgt. Woods

physically assaulted him even though he was non-threatening.  (Am. Compl. at 4 & Attach.

# 1.)  Further, he alleges that on August 22, 2010, Captain Ryan ordered that he be placed

in restraints and taken to an observation cell even though he was not suicidal.  (Am.

Compl. at 2.)  On August 26, 2010, the Plaintiff alleges Officer Woods and Sgt. Paul came

to his cell and threatened him with pepper spray fro no reason.   (Am. Compl. at 3.)

The Eighth Amendment prohibits those who operate prisons from using "excessive

physical force against inmates."  *Farmer v. Brennan*, 511 U.S. 825 (1994).  An inmate's

Eighth Amendment claim involves a subjective component and an objective component.

"Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison

official acted with a sufficiently culpable state of mind (subjective component) and whether

the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective

component)."  *Id.*

---

[5]To the extent his allegations relate to the general conditions of his confinement
regarding  the writing supplies, these claims also fail.  The Plaintiff has failed to show either
the objective or subjective elements of an Eighth Amendment conditions of confinement
claim. He has shown neither injury nor a substantial risk of serious harm based upon the
challenged conditions. His unsupported allegations of unspecific harm are insufficient to
state a claim of constitutional magnitude.

To prove the subjective component, a plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Whitley v. Albers,* 475 U.S. 312, 321(1986)).

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Hudson v. McMillian*, 503 U.S. 1, 6 (1992)(internal quotation marks omitted). Thus, the issue is not whether the use of force was absolutely necessary in hindsight, but "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321.

The objective component of an excessive force claim is not nearly as demanding, however, because " '[w]hen prison officials maliciously and sadistically use force to cause harm' . . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " *Wilkins,* 130 S.Ct. at 1179 (internal quotations omitted).

Furthermore, the absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy,* ---U.S. ----, ---- - ----, 130 S.Ct. 1175, 1178-1179, (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins,* 130 S.Ct. at 1178. However, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 1178-79.

First, any allegations regrading being threatened to be sprayed with mace by the Defendants, do not state a claim of excessive force. Verbal abuse of inmates by guards, without more, states no claim of assault. *Morrison v. Martin,* 755 F.Supp. 683, 687 (E.D.N.C.), aff'd, 917 F.2d 1302 (4th Cir. 1990).

As to the allegations regarding being placed in restraints, placement in ambulatory restraints also does not support an Eighth Amendment violation. In *Holley v. Johnson*, 2010 WL 2640328 (W.D.Va. June 30, 2010), the court found ambulatory restraints imposed on an inmate for forty-eight hours was not excessive force and reasoned "to the

20

extent the restraints make [changing positions, stretching his muscles, eating his meals, sleeping, or using the toilet] less comfortable and more difficult to execute effectively, they fall squarely among those conditions of prison life that are 'restrictive and even harsh' without rising to the level of unconstitutional punishment." *Id.* at *14.   Under the objective prong, the court found a temporary limitation of prisoners due to ambulatory restraints which "causes the inmate no physical injury other than temporary discomfort and embarrassment, simply cannot qualify as a use of force that is 'repugnant to the conscience of mankind.' " *Id.* at *14 (internal citations omitted).   Here, as in *Holly*, the Plaintiff has failed not only to prove any t injury, but he also failed to show the nature of force the ambulatory restraints imposed on him and their temporary application amounted to a use of force "repugnant to the conscience of mankind."

As to the Plaintiff's allegations that he was physically assaulted on August 22, 2010, by Officer Paul and Sgt. Woods (Am. Compl. at 4), the Plaintiff also fails to state an excessive force claim.   He alleges Sgt. Woods grabbed his shirt collar and "started to jack [him] up" and pushed him while threatening to spray the Plaintiff with mace.  (Am. Comp. Attach. # 1.)   He states he was in fear of being punched, so he tried to take Woods' hands off of him.   *Id.*   He alleges Woods was pushing him backwards and he was slammed against the door.  The Plaintiff then alleges Officer Paul grabbed the Plaintiff's arm and began to twist it so as to break or injure it.  *Id.*  He alleges he reminded them that the camera was on and they let him go.  *Id.*  He alleges the Defendants again threatened to spray him with mace and so the Plaintiff wrapped a towel around his face.  *Id.* He alleges as he was gathering his belonging from a desk, the Defendants Woods and Paul attempted to lift the Plaintiff off the floor.  (Am. Compl. Attach. # 1.)   He alleges he

21

reminded them again about the cameras and he then began to walk back to his cell.  *Id*.
He states these Defendants again threatened to mace him and they began to shake their
mace cans.  *Id*.  The Plaintiff alleges he feared he would be maced if he entered his cell
and so he resisted being placed in his cell by holding onto the door handles.  *Id*. He
alleges he held onto the handles until another officer arrived.  He then states he was
allowed to walk into his cell, but that the Defendants Woods and Paul still were threatening
him by shaking their mace cans.  *Id*.

       Taking the Plaintiff's allegations as true for the purposes of this summary judgment
motion, the Plaintiff states he was initially shoved by the Defendant Woods and that he
was in fear of being maced and punched when he tried to take Woods' hands off of him.
The Defendants contend that the Plaintiff was refusing to return to his cell and the Plaintiff
has not cooperating.  First, it is undisputed that the Plaintiff was not sprayed with any
mace, and as noted above, threats by officers will not support an excessive force claim.
Furthermore, as noted above, not every push or shove by an officer will support an
excessive force claim.  *See  Wilkins*, 130 S.Ct. at 1179-1180 (holding that the extent of
injury may provide some indication of the amount of force applied, and stating that "[a]n
inmate who complains of a 'push or shove' that causes no discernible injury almost
certainly fails to state a valid excessive force claim") (*citing Hudson*, 503 U.S. at 9 (internal
quotations omitted).   Additionally, the fact that the Plaintiff physically resisted the officer's
commands and efforts to enter his cell justified the use of some measure of force to gain
his compliance at that point.  The alleged used force by the Defendants Woods and Paul
is not "of a sort repugnant to the conscience of mankind."  *Id*.  Thus, the allegations are
not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive

22

force was used against the Plaintiff in this instance.  Accordingly, the Plaintiff has failed

to state an excessive force claim and the Defendants Woods and Paul should be granted

summary judgment on these claims.

<u>**CONCLUSION**</u>

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary

Judgment (Dkt. # 39) be GRANTED and the Complaint be DISMISSED with prejudice.

**IT IS SO RECOMMENDED.**


s/Bruce Howe Hendricks
United States Magistrate Judge


April 7, 2011
Charleston, South Carolina


**The Plaintiff's attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).